

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00295-CV

SABRI SALEM
APPELLANT

V.

JAWHAR ASI, MERVAT ASI, AND
JS TRANSPORT, INC.
APPELLEES

----------

### FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Sabri Salem appeals the trial court's order awarding Jawhar Asi, Mervat Asi, and JS Transport, Inc. (collectively, Asi) damages, attorney's fees, and prejudgment interest. We will affirm the trial court's judgment.

---

[1]See Tex. R. App. P. 47.4.

## Background Facts

Salem and Asi owned and operated JS Transport, Inc, a trucking company. There was no written contract between the parties, but they both agreed that they ran their company as a partnership. In June 2008, Asi discovered that Salem had "diverted payments and compensation for loads transported by JS Transport to his own benefit," and used JS Transport's credit for personal expenses. He also claimed that Salem diverted customers from JS Transport to Salem's own business.

Asi sued Salem in 2008 for, among other things, breaching the parties' partnership agreement, and sought damages and injunctive relief. Salem countersued Asi for, among other claims, breach of contract, fraud, conversion, and he sought an accounting of JS Transport. Salem retained counsel, but in May 2009, his counsel withdrew. Salem elected to represent himself.

At trial, Salem requested that Jamal Qaddura be appointed as his court interpreter. Asi objected because Qaddura was not a licensed court interpreter. Salem told the court that if the court was not going to appoint Qaddura as his interpreter, then he was "ready to proceed" without an interpreter. The record reveals that Salem showed little knowledge of trial procedures. After the lunch break, Salem repeated his request for an interpreter and also asked the court for a continuance so he could hire a lawyer. Qaddura testified that he believed he could be appointed as Salem's court interpreter under section 57.002 of the government code, which allows an unlicensed translator to serve when there is

2

no licensed translator of that language within seventy-five miles. *See* Tex. Gov't Code. Ann. § 57.002(d) (Vernon Supp. 2010).[2] Salem offered no evidence that there were no licensed Arabic interpreters within seventy-five miles. The trial court denied Salem's requests.

After hearing the evidence, the trial court issued judgment in favor of JS Transport for $8,906.96, plus $605.12 in prejudgment interest, and in favor of Jawhar and Mervat Asi for $62,444.32 plus $4,243.28 in prejudgment interest, and awarded them attorney's fees. The trial court also ordered that Salem take nothing against the defendants for his counterclaims. This appeal followed.

---

[2]Section 57.002(d) states,

> . . . [I]n a county with a population of 50,000 or more, a court may appoint a spoken language interpreter who is not a certified or licensed court interpreter if:
>
> (1) the language necessary in the proceeding is a language other than Spanish; and
>
> (2) the court makes a finding that there is no licensed court interpreter within 75 miles who can interpret in the language that is necessary in a proceeding.

Tex. Gov't Code Ann. § 57.002(d).

**Discussion**

**Issue 1:    Appointing an interpreter**

In his first issue, Salem argues that the trial court did not have the discretion to refuse Salem's request for an interpreter, or alternatively, that the trial court abused its discretion by denying his request.

**A.    The appointment of an interpreter is discretionary**

Section 57.002(a) of the government code states, "A court shall appoint a certified court interpreter or a licensed court interpreter if a motion for the appointment of an interpreter is filed by a party or requested by a witness in a civil or criminal proceeding in the court."  Tex. Gov't Code. Ann. § 57.002(a). Salem argues that because he was a party and a witness and he requested an interpreter, he should have been granted one.

The Attorney General has construed section 57.002 to require the appointment of a licensed interpreter whenever a court appoints an interpreter, but that the statute does not require the court to appoint an interpreter every time a motion is filed or a request made.  Tex. Att'y Gen. Op. No. JC-0584 (2002).  As the Attorney General has said, "[I]t would not be reasonable to construe section 57.002 to require a court to grant every motion or request for an interpreter."  *Id*. The Attorney General opined that the statute contains the conditional clause "if a motion for the appointment of an interpreter is filed by a party or requested by a witness," and reasoned that the conditional clause "indicates that the legislature intended for courts to have discretion to determine whether the party or witness

4

requires an interpreter." *Id*. With regard to a request for an interpreter as a witness, the Attorney General has construed the use of "shall" in the statute to mean that when a court decides to appoint an interpreter, the interpreter that it appoints must be licensed or certified. *Id*. "Licensed court interpreter" is defined as "an individual licensed under Subchapter C by the Texas Commission of Licensing and Regulation to interpret court proceedings for an individual who can hear but who does not comprehend English or communicate in English." Tex. Gov't Code. Ann. § 57.001(5) (Vernon Supp. 2010).

While recognizing that the Attorney General's opinion may be persuasive but not controlling, *see Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996), we agree with the reasoning expressed in the conclusion reached in the opinion. It would be an absurd result to hold that a trial court has a mandatory duty to appoint a licensed interpreter whenever an interpreter is requested. *See Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996) ("Courts should not read a statute to create . . . an absurd result."). The trial court may grant or deny a motion or request for an interpreter based on the trial court's assessment of the ability of the party or witness to communicate in English.

The statute is clear that as a party to a case, the court is only required to consider appointing an interpreter "if a motion for the appointment of an interpreter is filed." Tex. Gov't Code Ann. § 57.002(a). The use of the word "filed" indicates that section 57.002 "appears to contemplate written motions."

5

*See* Tex. Att'y Gen. Op. No. JC-0584. While "nothing precludes a court from granting a party's oral motion or request for appointment of an interpreter, or from appointing an interpreter on its own motion," in neither case is it required by the statute to do so. *See id.*

Salem did not file a written motion requesting an interpreter. Since there is no statutory mandate that the court grant a party's oral motion for an interpreter, the decision to appoint an interpreter to Salem as a party was discretionary. In considering Salem's oral motion to appoint an interpreter for him as a witness, the trial court determined that Salem adequately understood the English language and that he could competently communicate in English. The trial court has the discretion under section 57.002 to make that decision. Furthermore, the only possible interpreter proffered, Qaddura, testified that he was not licensed by the Texas Commission of Licensing and Regulation. Thus, even if the court were required to appoint an interpreter, it could not have appointed Qaddura.

**B. The trial court did not abuse its discretion by denying Salem's oral motion for an interpreter**

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled

6

differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

On appeal, Salem argues that his fluency in English was so lacking that the trial court's denial of his request for an interpreter was "akin to denying him the assistance of needed eyeglasses for reading, a hearing aid for hearing, or sufficient light to read." However, Salem repeatedly told the trial court that he understood what was being said. It is apparent from the record that his difficulty, and the reason for his request for an interpreter, was that he did not understand the meaning and significance of the legal jargon used by the court and opposing counsel.

When the trial court heard Salem's first request for an interpreter, Salem told the trial court, "I can present myself. If I don't have a translator, if the court isn't giving translator to me, I'm ready to proceed." The trial court noted, "I know that we were able to talk and I could understand you in the pretrial. I'm having a little bit harder time today, it seems like, but in the pretrial, I didn't have any difficulty understanding you. But you think you can proceed without a translator?" Salem answered, "Yes, ma'am, I can." The trial court asked him again, "Then do you have any objections to proceeding by yourself and us allowing the translator to—basically, to send him home?" Again, Salem responded in the affirmative, stating, "We don't need any translator. If this guy is not translate [*sic*], I'm ready to be on the stand and everything."

The trial continued.[3] Jawhar Asi took the stand and was examined by his counsel. Salem interrupted Jawhar's testimony, at which time the trial court asked Salem if he had an objection to the question being asked. Salem attempted to dispute Jawhar's statements and the trial court stopped him, explaining, "[I]t's not appropriate to interrupt the witness to give your version of the facts, except to state a legal objection to the question that is pending; do you understand?" Salem stated that he did. Asi also presented eleven exhibits, which he requested be admitted into evidence. The trial court asked Salem if he had any objections to the exhibits, and each time Salem said no.

However, upon returning from the lunch break, Salem told the trial court,

> I need my translator to be with me, because now I understand that I don't understand nothing, and the justice is not concerned with me, because I understand now it's what's mean to objected, injected or injected. I don't know what that means. Now, I understand. I means—everything that he says is not true.

---

[3]Salem argues that his lack of fluency in English is "clearly demonstrated in his Opening Statement, which appears to be mainly English words cobbled together, but which for all intents and purposes is 'gobble-de-gook.'" A review of his opening statement reveals that, aside from a few interruptions by the court reporter requesting that he slow down (which is not an uncommon request, even of native English speakers), Salem was quite able to communicate in English. For example, his recounting of a trip to Minnesota he took to buy trucks for Asi is hardly nonsense cobbled together:

> When we get there and he give me personal check, in Minnesota, he refuse the check. He say we need cashier's check. We call Jawhar Asi from Minnesota. We stayed two days in the Minnesota in the hotel, me and my brother. And after two days, he send me the cashier's check in FedEx. We receive the cashier's check and we give it to the company and the company will give us the two trucks.

8

The trial court responded,

> What I understand your argument to initially be was not so much a translation issue, but more of an issue that you're having a difficult time representing yourself in court perhaps because you don't understand what it means to make a legal objection.
>
> . . . .
>
> So what I'm concerned that I'm hearing about is it's a little bit of buyer's—not necessarily buyer's remorse, but it's a concern that maybe you can't do as an effective job representing yourself as what you thought that you could. But my concern is, is that this case has been on file since August 7th of 2008, and as I explained to you in the pretrial, you have every right to represent yourself pro se . . . . I told you at that time that I would have to hold you accountable to the rules of law, to the rules of evidence, to the rules of procedure.

The trial court then allowed Qaddura to retake the witness stand, where he argued that, under section 57.002(d), an unlicensed interpreter may be allowed to translate when there is no licensed interpreter for that language within seventy-five miles. *See* Tex. Gov't Code Ann. § 57.002(d)(2). Salem offered no evidence, through Qaddura's testimony or otherwise, that there were no licensed Arabic interpreters within seventy-five miles.

As stated above, the purpose of a court interpreter is "to interpret court proceedings for an individual who can hear but who does not comprehend English or communicate in English." *Id*. § 57.001(5). Salem participated in this case for almost a year without the assistance of counsel. He attended the pretrial conference and the trial court noted his ability to fully participate. Further, the trial court instructed Salem at the pretrial conference to locate a licensed interpreter for use at trial, if he determined he had the need for one.

9

Although he was not completely fluent, the record reflects that Salem comprehended and communicated in English. He stated himself that he understood what was being said except for a few specific words like "object." The evidence at trial undisputedly proved that Salem performed numerous jobs within the trucking company, including dispatching drivers, dealing with companies, and collecting payments for loads. He also dealt with the Department of Transportation. Salem completed credit applications that were entirely in English. A review of the record supports the trial court's conclusion that Salem's difficulty was not because he did not understand the English language but instead because he did not understand legal terminology and procedure. Salem chose to represent himself and cannot change that decision simply because it proved more difficult than he anticipated. *See Cheng v. Wang*, 315 S.W.3d 668, 672 (Tex. App.—Dallas 2010, no pet.) (noting that pro se litigant's difficulties with the technicalities of a trial do not constitute grounds for reversal) (citing *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves.")).

We hold that the trial court did not abuse its discretion by denying Salem's request to use an unlicensed interpreter, and we overrule his first issue.

**Issue 2:   Attorney's fees**

In his second issue, Salem argues that Asi was not entitled to attorney's fees. A party may recover reasonable attorney's fees, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008). When a prevailing party in a breach of contract suit seeks attorney's fees, an award of reasonable fees is mandatory under section 38.001 if there is proof of the reasonableness of the fees.[4] *See Atlantic Richfield Co. v. Long Trusts*, 860 S.W.2d 439, 449 (Tex. App.—Texarkana 1993, writ denied); *Budd v. Gay*, 846 S.W.2d 521, 524 (Tex. App.—Houston [14th Dist.] 1993, no writ).

Both parties stated in their pleadings that Asi and Salem made an oral contract for a business venture. Asi pleaded, among other causes of action, that Salem "willfully and persistently breached material duties arising under the parties' agreement," and he sought attorney's fees. At trial, Asi presented evidence of the reasonableness of the fees. The trial court found that Asi was entitled to damages and awarded him attorney's fees.

[4]Salem argues that Asi failed to present a demand as required by civil practice and remedies code section 38.002. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon 2008). Presentment must be raised at the trial court to be preserved on appeal. *See* Tex. R. App. P. 33.1(a); *Coleman v. Coleman*, No. 01-09-00615-CV, 2010 WL 5187612, at *2 (Tex. App.—Houston [1st Dist.] Dec. 23, 2010, no pet.) (mem. op.) (holding failure to raise section 38.002 presentment at the trial court waived issue on appeal); *Dumler v. Quality Work by Davidson*, No. 14-06-00536-CV, 2008 WL 89961, at *6 (Tex. App.-Houston [14th Dist.] Jan. 10, 2008, no pet.) (mem. op.) (same). Salem failed to raise presentment at the trial court and failed to preserve error on this issue.

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers Cnty.*, 922 S.W.2d 945, 948 (Tex. 1996); *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.). When a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *BMC Software Belg.*, *N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Estate of Rhea*, 257 S.W.3d at 790. Salem does not challenge the sufficiency of the evidence of Asi's breach of contract claim. Thus, we must presume that the trial court found in favor of Asi on his breach of contract claim. Because Asi prevailed on his breach of contract claim, he was entitled to attorney's fees. Salem's second issue is overruled.

**Issue 3:    Prejudgment interest**

In his third issue, Salem challenges the award of prejudgment interest. He argues that because Asi did not prevail on his claim for equitable relief, he is not entitled to prejudgment interest.

When no statute controls the award of prejudgment interest, the decision to award such interest is left to the sound discretion of the trial court. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex. 1985), *overruled on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 533 (Tex.1998); *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 861 (Tex. App.—Corpus Christi 1998, pet. denied). Therefore, the standard of review

12

for the award of prejudgment interest is abuse of discretion. *See Port Isabel*, 976 S.W.2d at 861 (citing *Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex. App.— Houston [14th Dist.] 1997, no writ); *European Crossroads' Shopping Ctr. Ltd. v. Criswell*, 910 S.W.2d 45, 55 (Tex. App.—Dallas 1995, writ denied)).

There is no statute that would allow for prejudgment interest in this case. Thus, an award of prejudgment interest in this case must be based in equity. *Cavnar*, 696 S.W.2d at 554. The principles set out in *Cavnar* have been applied to various types of cases, including contract cases for unascertainable damages. *See Perry Roofing Co. v. Olcott*, 744 S.W.2d 929, 930 (Tex. 1988) (noting that the purpose of prejudgment interest is to encourage settlements and discourage delay and expanding the types of claims to which *Cavnar* applies). Prejudgment interest may be awarded on equity principles, regardless of whether the cause of action sounds in equity. *See Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747, 748 (Tex. 1988) (awarding prejudgment interest based on equity in a contract claim). We hold that there is no evidence in this case that the trial court acted arbitrarily or unreasonably in awarding prejudgment interest. *See Port Isabel*, 976 S.W.2d at 861.

Salem also argues that the trial court erred in calculating when the prejudgment interest would begin to accrue. The statute reads in pertinent part, "[P]rejudgment interest accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day

13

preceding the date judgment is rendered." Tex. Fin. Code Ann. § 304.104 (Vernon 2006). Salem argues that the statute means that prejudgment interest begins to accrue 180 days after the defendant received written notice or 180 days after the suit was filed. Because the trial court awarded prejudgment interest from the date suit was filed, he argues that the trial court erred. Prejudgment interest begins to accrue either when the suit is filed or 180 days after written notice, whichever occurs first. *See Sanchez v. Brownsville Sports Ctr., Inc.*, 51 S.W.3d 643, 671 (Tex. App.—Corpus Christi 2001, pet. granted, judgm't vacated w.r.m.) ("Under the finance code . . . , prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives a written notice of a claim or (2) the date suit is filed."); *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 757–58 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("When there is no notice of claim, prejudgment interest is calculated from the day the suit was filed, not 180 days after the suit was filed."). We overrule Salem's third issue.

## Conclusion

Having overruled all of Salem's issues, we affirm the order of the trial court.

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; McCOY and GABRIEL, JJ.

DELIVERED:  May 26, 2011